OPINION OF THE COURT
ALDISERT, Circuit Judge.
Four New Jersey residents and two organizations (collectively “Appellants”) ap *428 peal from a judgment of the United States District Court for the District of New Jersey that held constitutional N.J.S.A. § 2C:58-4, a New Jersey law regulating the issuance of permits to carry handguns in public (“Handgun Permit Law”). Appellants contend that the District Court erred because (1) the Second Amendment secures a right to carry arms in public for self-defense; (2) the “justifiable need” standard of the Handgun Permit Law is an unconstitutional prior restraint; and (3) the standard fails any level of means-end scrutiny a court may apply. We will affirm the judgment of the District Court.
I.
Permits to carry handguns are “the most closely regulated aspect” of New Jersey’s gun control laws. In re Preis, 118 N.J. 564, 573 A.2d 148, 150 (1990). Individuals who wish to carry a handgun in public for self-defense must first obtain a license. N.J.S.A. § 2C:39-5(b).[1] The process and standard for obtaining such a license is found in New Jersey’s Handgun Permit Law, N.J.S.A. § 2C:58-4.
Under New Jersey’s Handgun Permit Law, individuals who desire a permit to carry a handgun in public must apply to the chief police officer in their municipality or to the superintendent of the state police. N.J.S.A. § 2C:58-4(c). The chief police officer or superintendent considers the application in accordance with the following provisions of the Handgun Permit Law:
No application shall be approved by the chief police officer or the superintendent unless the applicant demonstrates that he is not subject to any of the disabilities set forth in 2C:58-3c. [which includes numerous criminal history, age and mental health requirements], that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun.
Id. (emphasis added). The meaning of “justifiable need,” as it appears in this provision, is codified in the New Jersey Administrative Code as follows:
[T]he urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant’s life that cannot be avoided by means other than by issuance of a permit to carry a handgun.
N.J. Admin. Code 13:54-2.4(d)(l).[2]
Next, if the chief police officer or superintendent determines that the applicant *429 has met all the requirements, including demonstration of a “justifiable need,” the application is approved and sent to a superior court judge, who:
shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in section 2C:58-3c, that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun.
N.J.S.A. § 2C:58-4(d). If, alternatively, the chief police officer or superintendent determines that the applicant has not met the requirements, the applicant “may request a hearing in the Superior Court ... by filing a written request for such a hearing within 30 days of the denial.” Id. at § 2C:58-4(e).
II.
Desiring to carry handguns in public for self-defense, the individual plaintiffs here each applied for a permit according to the process described above. Their applications were denied, however, because pursuant to N.J.S.A. § 2C:58-4(e) either a police official or superior court judge determined that they failed to satisfy the “justifiable need” requirement.[3] The organizational plaintiffs asserted that their members and supporters have been denied public-carry permits and have refrained from applying for permits because they cannot demonstrate a “justifiable need” as required by the Handgun Permit Law. Appellants sought declaratory and injunctive relief, contending that New Jersey may not condition the issuance of a public-carry permit on an applicant’s ability to demonstrate a “justifiable need.” The District Court rejected Appellants’ arguments, and accordingly denied Appellants’ motion for summary judgment and granted Appellees’ motion to dismiss. Appellants timely appealed.[4]
III.
This appeal prompts us to consider multiple questions. We will consider each in turn following the two-step approach this Court set forth in United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir.2010):
First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment’s guarantee.... If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.
Here, we conclude that the requirement that applicants demonstrate a “justifiable need” to publicly carry a handgun for self-defense qualifies as a “presumptively lawful,” “longstanding” regulation and therefore does not burden conduct within the scope of the Second Amendment’s guaran *430 tee. Accordingly, we need not move to the second step of Marzzarella. Nevertheless, because of the important constitutional issues presented, we believe it to be beneficial and appropriate to consider whether the “justifiable need” standard withstands the applicable intermediate level of scrutiny. We conclude that even if the “justifiable need” standard did not qualify as a “presumptively lawful,” “longstanding” regulation, at step two of Marzzarella it would withstand intermediate scrutiny, providing a second, independent basis for concluding that the standard is constitutional.
IV.
It. remains unsettled whether the individual right to bear arms for the purpose of self-defense extends beyond the home.[5] In 2008, the Supreme Court explicitly recognized for the first time that the Second Amendment confers upon individuals a right to keep and bear arms for self-defense by holding that a District of Columbia law forbidding the individual possession of usable handguns in the home violated the Second Amendment. See District of Columbia v. Heller, 554 U.S. 570, 595, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). In 2010, the Court recognized that the Second Amendment right articulated in Heller applied equally to the states through the Fourteenth Amendment. See McDonald v. City of Chicago, — U.S. -, 130 S.Ct. 3020, 3026, 177 L.Ed.2d 894 (2010). Taken together, these cases made clear that “Second Amendment guarantees are at their zenith within the home.” Kachalsky v. County of Westchester, 701 F.3d 81, 89 (2d Cir.2012), cert. denied, -U.S.-, 133 S.Ct. 1806, 185 L.Ed.2d 812 (2013). Outside of the home, however, we encounter the “vast terra incognita” recognized by the Fourth Circuit in United States v. Masciandaro, 638 F.3d 458, 475 (4th Cir. 2011), cert. denied, — U.S. -, 132 5.Ct. 756, 181 L.Ed.2d 482 (2011). Compare also Marzzarella, 614 F.3d at 92 (“[Cjertainly, to some degree, [the Second Amendment] must protect the right of law-abiding citizens tp possess firearms for other, as-yet-undefined, lawful purposes.”), with Masciandaro, 638 F.3d at 475 (“There may or may not be a Second Amendment right in some places beyond the home.”).
Although Heller does not explicitly identify a right to publicly carry arms for self-defense, it is possible to conclude that Heller implies such a right. The Seventh Circuit reached this very conclusion in Moore v. Madigan, 702 F.3d 933, 942 (7th Cir.2012), when it stated that “[t]he Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside.”[6] As the Second Circuit *431 recently explained, however, Heller “was never meant- ‘to clarify the entire field’ of Second Amendment. jurisprudence,” Kachalsky, 701 F.3d at 89 (quoting Heller, 554 U.S. at 635, 128 S.Ct. 2783), but rather struck down a single law that “ran roughshod” over D.C. residents’ individual right to possess usable handguns in the home, id. at 88. Hence, the Seventh Circuit in Moore may have read Heller too broadly. As the Seventh Circuit itself had earlier stated in United States v. Skoien, 614 F.3d 638, 640 (7th Cir.2010) (en banc), cert. denied, — U.S.-, 131 S.Ct. 1674, 179 L.Ed.2d 645 (2011), Heller’s language “warns readers not to treat Heller as containing broader holdings than the Court set out, to establish: that the Second Amendment created individual rights, one of which is keeping operable handguns at home for self-defense.” Id. (emphasis added).
Appellants contend also that “[tjext, history, tradition and precedent all confirm that [individuals] enjoy a right to publicly carry arms for their defense.” Appellants’ Brief 12 (emphasis added). At this time, we are not inclined to address this contention by engaging in a round of full-blown historical analysis, given other courts’ extensive consideration of the history and tradition of the Second Amendment. See, e.g., Heller, 554 U.S. at 605-619, 128 S.Ct. 2783 (“We now address how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century.”). We reject Appellants’ contention that a historical analysis leads inevitably to the conclusion that the Second Amendment confers upon individuals a right to carry handguns in public for self-defense. As the Second Circuit observed in Kachalsky, “[h]istory and tradition do not speak with one voice here. What history demonstrates is that states often disagreed as to the scope of the right to bear arms, whether the right was embodied in a state constitution or the Second Amendment.” 701 F.3d at 91.
For these reasons, we decline to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home, the “core” of the right as identified by Heller. We do, however, recognize that the Second Amendment’s individual right to bear arms may have some application beyond the home. Ultimately, as our Court did in Marzzarella, we refrain from answering this question definitively because it is not necessary to our conclusion.
V.
Assuming that the Second Amendment individual right to bear arms does apply beyond the home, we next consider whether or not the requirement that applicants demonstrate a “justifiable need” to publicly carry a handgun for self-defense burdens conduct within the scope of that Second Amendment guarantee. See Marzzarella, 614 F.3d at 92. As this Court has stated, certain longstanding regulations are “exceptions” to the right to keep and bear arms, such that the conduct they regulate is not within the scope of the Second Amendment. See United States v. Barton, 633 F.3d 168, 172 (3d Cir.2011); United States v. Huet, 665 F.3d 588, 600 (3d Cir.2012). Here, we agree with the District Court that even if some protected right to carry arms outside the home exists, the challenged requirement that applicants demonstrate a “justifiable need” to obtain a permit to publicly carry a hand *432 gun for self-defense qualifies as a “longstanding,” “presumptively lawful” regulation.
In Heller the Supreme Court noted that nothing in its opinion “should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings” and identified these “regulatory measures” as “presumptively lawful” ones. 554 U.S. at 571, 571 n. 26, 128 S.Ct. 2783. It then stated that the presumptively lawful regulations it identified by name did not compose an “exhaustive” list, but the Court did not provide guidance on how to identify other regulations that may qualify. Id.
Exploring the meaning of “presumptively lawful,” this Court has stated that “presumptively lawful” regulatory measures are “exceptions to the Second Amendment guarantee.” Marzzarella, 614 F.3d at 91.[7] Acknowledging that the exceptions identified in Heller “all derived from historical regulations,” the Marzzarella Court stated that “it is not clear that pre-ratification presence is the only avenue to a categorical exception.” Id. at 93. Although Marzzarella stated also that “prudence counsels caution when extending [the] recognized [Heller] exceptions to novel regulations unmentioned by Heller,” 614 F.3d at 93, we nevertheless conclude, for the reasons that follow, that the requirement that applicants demonstrate a “justifiable need” to publicly carry a handgun for self-defense is a presumptively lawful, longstanding licensing provision under the teachings of Heller and Marzzarella.
The “justifiable need” standard Appellants challenge has existed in New Jersey in some form for nearly 90 years. See Siccardi v. State, 59 N.J. 545, 284 A.2d 533, 538 (1971). Beginning in 1924[8] New Jersey “directed that no persons (other than those specifically exempted such as police officers and the like) shall carry [concealed] handguns except pursuant to permits issuable only on a showing of ‘need.’” Id. (internal citations omitted). In 1966, New Jersey amended its laws to prohibit individuals from carrying handguns in public, in any manner, without first obtaining a permit, and again conditioned the issuance of such permits on a showing of need. The predecessor to the Handgun Permit Law subsequently underwent multiple revisions, the requirement of “need” enduring each, and ultimately the present-day standard of “justifiable need” became statutorily enshrined in 1978.
New Jersey’s longstanding handgun permitting schema is not an anomaly. Many recent judicial opinions ■ have discussed historical laws regulating or prohibiting the carrying of weapons in public. See, e.g., Peterson v. Martinez, 707 F.3d *433 1197, 1201 (10th Cir.2013) (“extending” the recognized Heller exceptions to cover regulations on the carrying of concealed firearms, stating that “[i]n light of our nation’s extensive practice of restricting citizens’ freedom to carry firearms in a concealed manner, we hold that this activity does not fall within the scope of the Second Amendment’s protections”). In the 19th Century, “[m]ost states enacted laws banning the carrying of concealed weapons,” and “[s]ome states went even further than prohibiting the carrying of concealed weapons ... banning] concealable weapons (subject to certain exceptions) altogether whether carried openly or concealed.” Kachalsky, 701 F.3d at 95-96. As Appellants correctly note, some state courts determined that prohibitions on concealed carrying were permissible because open carrying remained available as an avenue for public carrying. But those state court determinations do not compel us to conclude that the “justifiable need” standard, which in New Jersey must be met to carry openly or concealed, fails to qualify as a “longstanding,” “presumptively lawful” exception to the Second Amendment guarantee. The “justifiable need” standard fits comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense. In fact, it does not go as far as some of the historical bans on public carrying; rather, it limits the opportunity for public carrying to those who can demonstrate a justifiable need to do so. See id. at 90 (discussing states that once “banned the carrying of pistols and similar weapons in public, both in a concealed or an open manner”) (citing Ch. 96, §§ 1-2, 1881 Ark. Acts at 191-92; Ch. 13, § 1,1870 Term. Acts at 28; Act of Apr. 12; 1871, ch. 34, § 1, 1871 Tex. Gen. Laws at 25; Act of Dec. 2, 1875, ch. 52, § 1, 1876 Wyo. Terr. Comp. Laws, at 352).[9]
A close analogue to the New Jersey standard can be found in New York’s permit schema, which has required a showing of need, or “proper cause,” for a century. In 1913 New York determined that a reasonable method for addressing the dangers inherent in the carrying of handguns in public was to limit handgun possession in public to-those showing “proper cause” for the issuance of a permit. Kachalsky, 701 F.3d at 85 (citing 1913 Laws of N.Y., ch. 608, at 1627-1630). In combination with New York’s ban on open carrying, typical New Yorkers- desiring to carry a handgun in public must demonstrate “proper cause,” just as typical New Jerseyans must demonstrate “justifiable need.”[10] As the District Court noted, New York’s statute was “adopted in the same era that states began adopting the felon in possession statutes that Heller explicitly recognized as being presumptively lawful longstanding regulations.” District Court Opinion 32. The D.C. Circuit in Heller v. District *434 of Columbia, 670 F.3d 1244, 1253 (D.C.Cir.2011) [Heller II ], stated that the Supreme Court “considered ‘prohibitions on the possession of firearms by felons’ to be ‘longstanding[1] although states did not start to enact them until the early 20th century.” Simply put, we need not find that New Jersey and other states, at the time of the adoption of the Bill of Rights, required a particularized showing of objective justification to carry a handgun.[11] Accordingly, New York’s adoption of a “proper cause” standard in 1913, 11 years before New Jersey required that permits be issued only upon a showing of “need,” supports our conclusion that New Jersey’s “justifiable need” standard may be upheld as a longstanding regulation.[12]
We discern no hint- in the Second Amendment jurisprudence of either the Supreme Court or this Court that the analysis of a particular regulation in a particular jurisdiction should turn entirely on the historical experience of that jurisdiction alone. To the contrary, in Barton, our analysis of the constitutionality of a federal firearm restriction included consideration of the fact that at least seven state legislatures “had adopted bans on the carrying of concealed weapons by violent offenders” prior to 1923. 633 F.3d at 173.
Consequently, assuming that the Second Amendment confers upon individuals some right to carry arms outside the home, we would nevertheless conclude that the “justifiable need” standard of the Handgun Permit Law is a longstanding regulation that enjoys presumptive constitutionality under the teachings articulated in Heller and expanded upon in our Court’s precedent. Accordingly, it regulates conduct falling outside the scope of the Second Amendment’s guarantee.
VI.
As discussed above, we believe that the “justifiable need” standard of the Handgun Permit Law qualifies as a “longstanding,” “presumptively lawful” regulation that regulates conduct falling outside the scope of the Second Amendment’s guarantee. Consequently, we need not move- to the second step of Marzzarella to apply means-end scrutiny, but we have decided to do so because the constitutional issues presented to us in this new era of Second Amend *435 ment jurisprudence are of critical importance. Even assuming that the “justifiable need” standard is. not a longstanding regulation enjoying presumptive constitutionality, at the second step of Marzzarella it withstands the appropriate, intermediate level of scrutiny, and accordingly we would uphold the continued use of the standard on this basis as well.
A.
As a preliminary matter, we reject Appellants’ invitation to apply First Amendment prior restraint doctrine rather than traditional means-end scrutiny. Appellants contend that we should apply the First Amendment prior restraint doctrine because application of the Handgun Permit Law’s “justifiable -need” standard vests licensing officials with “unbridled discretion.” Appellants correctly note that this Court has stated that “the structure of First Amendment doctrine should inform our analysis of the Second Amendment.” See Marzzarella, 614 F.3d at 89 n. 4. This statement, however; reflects this Court’s willingness to consider the varying levels of means-end scrutiny applied to First Amendment challenges when determining what level of scrutiny to apply to a Second Amendment challenge. It does not compel us to import the prior restraint doctrine. Indeed, this Court has rejected a similar invitation to import the First Amendment overbreadth doctrine to the Second Amendment context. See Barton, 633 F.3d at 172 n. 3.
Even if we were to apply the prior restraint doctrine, it would not compel the result sought by Appellants because New Jersey’s Handgun Permit Law does not vest licensing officials with “unbridled discretion.” Appellants incorrectly characterize the “justifiable need” standard as a highly discretionary, seat-of-the-pants determination. On the contrary, the standards to be applied by licensing officials are clear and specific, as they are codified in New Jersey’s administrative code and have been explained and applied in numerous New Jersey court opinions. Moreover, they are accompanied by specific procedures [13] that provide “safeguards against arbitrary official action.” See Siccardi, 284 A.2d at 539. Accordingly, we conclude that even if we were to apply the prior restraint doctrine, the Handgun Permit Law would survive its application.
B.
Having determined that it would not be appropriate to import First Amendment prior restraint doctrine to our analysis of Appellants’ Second Amendment challenge here, we conclude that the appropriate level of traditional means-end scrutiny to apply would be intermediate scrutiny.
As laws burdening protected conduct under the First Amendment are susceptible to different levels of scrutiny, similarly “the Second Amendment can trigger more than one particular standard of scrutiny, depending, at least in part, upon the type of law challenged and the type of Second Amendment restriction at issue.” United States v. Reese, 627 F.3d 792, 801 (10th Cir.2010) (citing Marzzarella, 614 F.3d at 96-97) (internal quotation marks and alterations omitted).
Three levels of scrutiny are potentially available: rational basis review, intermediate scrutiny, and strict scrutiny. Marzzarella, 614 F.3d at 95-99. Under rational basis review, we would “presume[ ] the law is valid and ask[ ] only whether the statute is rationally related to a legitimate state interest,” id. at 95-96 n. 13 (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. *436 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)), but Heller makes clear that we may not apply rational basis review to a law that burdens protected Second Amendment conduct, id. at 95-96 (citing Heller, 554 U.S. at 628 n. 27, 128 S.Ct. 2783). At the other end of the spectrum is strict scrutiny, which demands that the statute be “narrowly tailored to promote a compelling Government interest ... [;] [i]f a less restrictive alternative would serve the Government’s purpose, the legislature must use that alternative.” United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (internal citations omitted). In between is intermediate scrutiny, under which the government’s asserted interest must be more than just legitimate but need not be compelling. It must be “significant, substantial, or important.” Marzzarella, 614 F.3d at 98 (internal quotation marks and citations omitted). Additionally, “the fit” between the asserted interest and the challenged law need not be “perfect,” but it must be “reasonable”[14] and “may not burden more [conduct] than is reasonably necessary.” Id.
In Marzzarella, this Court applied intermediate scrutiny to evaluate the constitutionality of a federal law prohibiting possession of firearms with obliterated serial numbers. 614 F.3d at 97. Appellants contend that Marzzarella should not inform our analysis of the appropriate level of scrutiny to apply here because the law at issue in Marzzarella “d[id] not severely limit the possession of firearms.” See id. They contend that only strict scrutiny could possibly apply to the case at bar because the burden imposed by the “justifiable need” standard “is substantial, implieating the core rights of responsible, law-abiding citizens to engage in an activity whose protection is literally enumerated.” Appellants’ Brief 52. We disagree.
In the First Amendment context, strict scrutiny is triggered when the government imposes content-based restrictions on speech in a public forum. See Pleasant Grove City v. Summum, 555 U.S. 460, 469, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009). In essence, this is the core of the First Amendment, just like the core of the right conferred upon individuals by the Second Amendment is the right to possess usable handguns in the home for self-defense. See Kachalsky, 701 F.3d at 93 (“[W]e believe that applying less than strict scrutiny when the regulation does not burden the ‘core’ protection of self-defense in the home makes eminent sense in this context and is in line with the approach taken by our sister circuits.”). We agree with the District Court, therefore, that strict scrutiny should not apply here, because “[i]f the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is not part of the core of the Amendment.” District Court Opinion 39. Accordingly, we will apply intermediate scrutiny here.
C.
As stated above, under intermediate scrutiny the government must assert a significant, substantial, or important interest; there must also be a reasonable fit between that asserted interest and the challenged law, such that the law does not burden more conduct than is reasonably necessary. Marzzarella, 614 F.3d at 98. When reviewing the constitutionality of statutes, courts “accord substantial defer *437 enee to the [legislature’s] predictive judgments.” See Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 195, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997).
D.
The State of New Jersey has, undoubtedly, a significant, substantial and important interest in protecting its citizens’ safety. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[15] The issue here, therefore, is whether there is a “reasonable fit” between this interest in safety and the means chosen by New Jersey to achieve it: the Handgun Permit Law and its “justifiable need” standard.[16]
1.
The predictive judgment of New Jersey’s legislators is that limiting the issuance of permits to carry a handgun in public to only those who can show a “justifiable need” will further its substantial interest in public safety.[17] New Jersey contends that the “justifiable need” standard “precisely fits New Jersey’s interest in assessing the corresponding dangers and risk to the public and to the person seeking to carry a handgun. The [standard] provides a means to determine whether the increase in risk and danger borne by the public is justified by a demonstrated risk and danger borne to the person seeking to carry a handgun.” Appellees’ Brief 34. To be sure, New Jersey has not presented us with much evidence to show how or why its legislators arrived at this predictive judgment. New Jersey’s counsel acknowledges that “there is no available commentary which would clarify whether or not the Legislature considered statistical information to support the public safety purpose of the State’s Carry Permit Law.” Appellees’ February 27, 2013 Letter at 1-2.
New Jersey’s inability to muster legislative history indicating what reports, statistical information, and other studies its legislature pondered when it concluded that requiring handgun permit applicants to demonstrate a “justifiable need” would reasonably further its substantial public safety interest, notwithstanding the potential burden on Second Amendment rights, is unsurprising. First, at each relevant moment in the history of New Jersey gun laws, spanning from 1905[18] to 1981,[19] the *438 legislature could not have foreseen that restrictions on carrying a firearm outside the home could run afoul of a Second Amendment that had not yet been held to protect an individual right to bear arms, given that the teachings of Heller were not available until that landmark case was decided in 2008. Moreover, Second Amendment protections were not incorporated against the. states until 2010, when the Supreme Court issued its splintered opinion in McDonald. Simply put, New Jersey’s legislators could not have known that they were potentially burdening protected Second Amendment conduct, and as such we refuse to hold that the fit here is not reasonable merely because New Jersey cannot identify a study or tables of crime statistics upon which it based its predictive judgment. As the District Court correctly concluded, New Jersey’s legislature “has continually made the reasonable inference that given the obviously dangerous and deadly nature of handguns, requiring a showing of particularized need for a permit to carry one publicly serves the State’s interests in public safety.” District Court Opinion 42. To require applicants to demonstrate a “justifiable need” is a reasonable implementation of New Jersey’s substantial, indeed critical, interest in public safety. See IMS Health, Inc. v. Ayotte, 550 F.3d 42, 55 (1st Cir.2008) (explaining that under intermediate scrutiny states are “allowed to justify speech restrictions by reference to studies and anecdotes,” and also by reference to “history, consensus, and simple common sense”) (internal quotation marks omitted), abrogated on other grounds by-U.S.-, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011).
2.
Legislators in other states, including New York and Maryland, have reached this same predictive judgment and have enacted similar laws as a means to improve public safety. As mentioned above, in 1913 New York enacted a law requiring applicants to demonstrate “proper cause— a special need for self-protection.” Kachalsky, 701 F.3d at 84. Maryland law allows issuance of a permit to carry a handgun in public only upon a finding that an applicant “has good and substantial reason to wear, carry, or transport a handgun, such as a finding that the permit is necessary as a reasonable precaution against apprehended danger.” Woollard v. Gallagher, 712 F.3d 865 (4th Cir.2013) (citing Md. Code Ann., Pub. Safety § 5-306(a)(5)(ii)).
In Siccardi, the Supreme Court of New Jersey quoted from a staff report to the National Commission on the Causes and Prevention of Violence by Newton and Zimring, who:
evaluated the utility of firearms as weapons of defense against crime. They found that private possession of a handgun is rarely an effective means of self-protection; and so far as the carrying of handguns is concerned, they noted that “no data exist which would establish the value of firearms as a defense against attack on the street” though “there is evidence that the ready accessibility of guns contributes significantly to the number of unpremeditated homicides arid to the seriousness of many assaults.”
Siccardi, 284 A.2d at 537 (citing Newton and Zimring, Firearms and Violence in American Life, p. 67 (1968)).
Although we lack an explicit statement by New Jersey’s legislature explaining why it adopted the “justifiable need” standard, its 1978 decision to change “need” to “justifiable need” suggests that the legislature agreed with Siccardi’s reasoning and ultimate conclusion. See Siccardi, 284 A.2d at 535 (approving denial of a permit for failure to “justify a need for carrying a weapon”) (emphasis added). As discussed *439 above in Section I, the executive branch similarly indicated its approval of Siccardi when it defined “justifiable need” in the Administrative Code by closely tracking the Supreme Court of New Jersey’s language. See id. at 540.
3.
We must emphasize that the fit between the challenged law and the interest in public safety need only be “reasonable.” As New Jersey correctly notes, the Handgun Permit Law and its “justifiable need” standard provide “a means to determine whether the increase in risk and danger borne by the public is justified by a demonstrated risk and danger borne to the person seeking to carry a handgun.” Appellees’ Brief 34. By contrast, Appellants contend that enabling qualified, responsible, law abiding people to defend themselves from crime by carrying a handgun, regardless of their ability to show a “justifiable need,” serves the interest of public safety. New Jersey legislators, however, have made a policy judgment that the state can best protect public safety by allowing only those qualified individuals who can demonstrate a “justifiable need” to carry a handgun to do so. In essence, New Jersey’s schema takes into account the individual’s right to protect himself from violence as well as the community at large’s interest in self-protection. It is New Jersey’s judgment that when an individual carries a handgun in public for his or her own defense, he or she necessarily exposes members of the community to a somewhat heightened risk that they will be injured by that handgun. New Jersey has decided that this somewhat heightened risk to the public may be outweighed by the potential safety benefit to an individual with a “justifiable need” to carry a handgun. Furthermore, New Jersey has decided that it can best determine when the individual benefit outweighs the increased risk to the community through careful case-by-case scrutiny of each application, by the police and a court.[20]
Other states have determined that it is unnecessary to conduct the careful, case-by-case scrutiny mandated by New Jersey’s gun laws before issuing a permit to publicly carry a handgun. Even accepting that there may be conflicting empirical evidence as to the relationship between public handgun carrying and public safety, this does not suggest, let alone compel, a conclusion that the “fit” between New JerT sey’s individualized, tailored approach and public safety is not “reasonable.”
4.
As to the requirement that the “justifiable need” standard not burden more conduct than is reasonably necessary, we agree with the District Court that the standard meets this requirement. “Unlike strict scrutiny review, we are not required to ensure that the legislature’s chosen means is ‘narrowly tailored’ or the least restrictive available means to serve the stated governmental interest.” Kachalsky, 701 F.3d at 97. New Jersey engages in an individualized consideration of each person’s circumstances and his or her objective, rather than subjective, need to car *440 ry a handgun in public. This measured approach neither bans public handgun carrying nor allows public carrying by all firearm owners; instead, the New Jersey Legislature left room for public carrying by those citizens who can demonstrate a “justifiable need” to do so.[21] We refuse Appellants’ invitation to intrude upon the sound judgment and discretion of the State of New Jersey, and we conclude that the “justifiable need” standard withstands intermediate scrutiny.
VII.
We conclude that the District Court correctly determined that the requirement that applicants demonstrate a “justifiable need” to publicly carry a handgun for self-defense qualifies as a “presumptively lawful,” “longstanding” regulation and therefore does not burden conduct within the scope of the Second Amendment’s guarantee. We conclude also that the District Court correctly determined that even if the “justifiable need” standard fails to qualify as such a regulation, it nonetheless withstands intermediate scrutiny and is therefore constitutional. Accordingly, we will affirm the judgment of the District Court.

. For exemptions to the general rule that individuals may not carry a handgun in public without a permit, see N.J.S.A. § 2C:39-6. For example, individuals employed in certain occupations may carry a firearm "in the performance of their official duties,” see, e.g., N.J.S.A. § 2C:39-6(a)(2), and individuals may carry a firearm “in the woods or fields ... for the purpose of hunting,” see N.J.S.A. § 2C:39 — 6(F)(2).

. This codification of the "justifiable need” standard closely mirrors an earlier explanation of "need” that was laid out by the Supreme Court of New Jersey in Siccardi v. State, 59 N.J. 545, 284 A.2d 533 (1971). See id. at 557, 284 A.2d 533 (explaining that New Jersey law restricts the issuance of permits to those "who can establish an urgent necessity for ... self-protection,” which may be limited to those “whose life is in real danger, as evidenced by serious threats or earlier attacks”). Since Siccardi, many other New Jersey state court opinions have also explained this standard. See In re Preis, 573 A.2d at 152 (“[Tjhere must be an urgent necessity [] for self-protection. The requirement is of specific threats or previous attacks demonstrating a special danger to the applicant’s life that cannot be avoided by other means. Generalized fears for personal safety are inadequate____") (internal citations and quotation marks omitted); In re Pantano, 429 N.J. Super. 478, 60 A.3d 507, 510 (App.Div.2013) (discussing and *429 applying "justifiable need” standard); In re Application of Borinsky, 363 N.J.Super. 10, 830 A.2d 507 (App.Div.2003) (same).

. In March 2013, one of the original plaintiffs, Daniel Piszczatoski, was granted a permit on other grounds (as a retired law enforcement officer) and was dismissed as an Appellant.

. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and could consider Appellants' request for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court’s determination that the New Jersey Handgun Permit Law is constitutional, United States v. Fullmer, 584 F.3d 132, 151 (3d Cir.2009); the District Court’s dismissal of Appellants’ complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Monroe v. Beard, 536 F.3d 198, 205 (3d Cir.2008); and the District Court’s denial of Appellants' motion for summary judgment, State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir.2009) (citation omitted).

. Rather than discussing whether or not the individual right to bear arms for the purpose of self-defense articulated in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) "extends beyond the home,” it may be more accurate to discuss whether, in the public sphere, a right similar or parallel to the right articulated in Heller "exists.” Firearms have always been more heavily regulated in the public sphere so, undoubtedly, if the right articulated in Heller does "extend beyond the home,” it most certainly operates in a different manner.

. We note that the Seventh Circuit gave the Illinois legislature time to come up with a new law that would survive constitutional challenge, implying that some restrictions on the right to carry outside the home would be permissible, while holding that the challenged law containing a flat ban on carrying a handgun in public was unconstitutional. Accordingly, on July 9, 2013 Illinois enacted a law requiring issuance of concealed carry licenses to individuals meeting basic statutory requirements similar to those required for New Jersey applicants, but the law does not require applicants to show a "justifiable need.” Discretion in granting concealed carry licenses *431 appears to be limited to a determination of whether the applicant "pose[s] a danger to himself, herself, or others, or a threat to public safety.” Firearm Concealed Carry Act, Illinois Public Act 098-0063, available at http://www.ilga.gov/legislation/publicacts/98/ PDF/ 098-0063.pdf.

. As this Court stated in Marzzarella:
We recognize the phrase "presumptively lawful” could have different meanings under newly enunciated Second Amendment doctrine. On the one hand, this language could be read to suggest the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment. On the other hand, it may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny. Both readings are reasonable interpretations, but we think the better reading, based on the text and the structure of Heller, is the former — in other words, that these longstanding limitations are exceptions to the right to bear arms.
614 F.3d at 91.

. In 1905, New Jersey enacted a statute providing for criminal punishment of the concealed carrying of "any revolver, pistol, [or] firearm," but allowed an exception for those with permits. Compiled Statutes of New Jersey, Vol. II., 1759 (Soney & Sage 1911). It does not appear, however, that the law contained any standards for issuance of such permits. Id.

. Contrary to the Dissent's suggestion, requiring demonstration of a "justifiable need” pri- or to issuance of a permit to carry openly or concealed does not amount to "a complete prohibition on public carry.” Dissenting Opinion 449. Although the Dissent eventually acknowledges that New Jersey is merely regulating public carry, see id. at'451, it takes pains to refer to New Jersey’s approach as a "prohibition,” referring to New Jersey's schema as "a prohibition against both open and concealed carry without a permit. Id. at 449 (emphasis added). This obfuscates what New Jersey is actually doing. It is regulating public carry by imposing an objective standard for issuance of a public carry permit, and its regulation is a longstanding, presumptively constitutional one.

. Here, we use the phrase "typical” to refer to persons in New York and New Jersey who do not fall into any of the statutorily specified categories of persons who may carry a firearm in public without demonstrating "proper cause” or "justifiable need,” respectively. Accordingly, the individual plaintiffs in this case are "typical,” as they do not fall into any of those specified categories.

. In Barton, 633 F.3d at 173, we explained that the "first federal statute disqualifying felons from possessing firearms was enacted in 1938," adding that "Congress did not bar nonviolent felons from possessing guns until 1961.” Our sister courts have likewise recognized that a firearms regulation may be "longstanding” and "presumptively lawful” even if it was only first enacted in the 20th century. See National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 196-97 (5th Cir.2012) (upholding as a "longstanding” provision a federal statute prohibiting transfer of firearms from federal licensees to individuals under age 21, -which Congress did not adopt until 1968); United States v. Skoien, 614 F.3d 638, 640-41 (7th Cir.2010) (explaining that 18 U.S.C. § 922(g)(4), which forbids firearm possession by a person who has been adjudicated to be mentally ill, was enacted in 1968). "After all, Heller considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid-20th century vintage.” National Rifle Ass’n, 700 F.3d at 196.

. The Dissent suggests that the longstanding nature of New York's "proper cause” standard cannot support our conclusion that the "justifiable need” standard qualifies as a longstanding regulation. It states that the "Second Circuit ... upheld New York’s law because it survived intermediate scrutiny, not because it evaded Second Amendment cognizance on account of its longstandingness.” Dissenting Opinion 452. We agree that this is what the Kachalsky court did, but disagree that its decision to resolve the case solely through intermediate scrutiny requires that we do the-same here. We cite to Kachalsky here merely for its description of New York's law and standard.

. See N.J.S.A. § 2C:58-4(e) (allowing an applicant whose application is denied by the chief police officer or superintendent to "request a hearing in the Superior Court ... by filing a written request for such a hearing within 30 days of the denial”).

. Marzzarella has articulated for this Court that Second Amendment intermediate scrutiny requires a fit that is “reasonable." See 614 F.3d at 98. We note that the Fourth Circuit also requires a "reasonable” fit, although the Second Circuit requires a "substantial” fit. Compare Woollard v. Gallagher, 712 F.3d 865 (4th Cir.2013) (stating that the fit must be "reasonable,” but need not be perfect), with Kachalsky, 701 F.3d at 97 (stating that the fit must be "substantial” but citing Marzzarella for the standard).

. Appellants do not dispute this point.

. The Dissent repeatedly states that we do not consider the "justifiable need requirement itself” but rather "examin[e] the permitting requirement as a whole.” See, e.g., Dissenting Opinion 453, 456-57. This is a mischaracterization, to which we respond, res ipsa loquitur.

. New Jersey has asserted that the interests served by the Handgun Permit Law and its "justifiable need” standard include “combating handgun violence,” "combating the dangers and risks associated with the misuse and accidental use of handguns,” and "reducing] the use of handguns in crimes.” Appellees' Brief 34. All of these interests fall under the substantial government interest in "ensuring] the safety of all of its citizenry." Id. The Dissent improperly narrows the "fit” inquiry to consider only one asserted interest, writing: "we must ask whether the State has justified its conclusion that those with a special need for self-defense are less likely to misuse or accidently use a handgun than those who do not have a special need.” Dissenting Opinion 453.

. See Compiled Statutes of New Jersey, Vol. II., 1759 (Soney & Sage 1911) (reprinting 1905 statute stating "[a]ny person who shall carry any revolver, pistol, firearm, bludgeon, blackjack, knuckles, sand-bag, slung-shot or other deadly, offensive or dangerous weapon, or any stiletto, dagger or razor or any knife with a blade five inches in length or over concealed in or about his clothes or person, shall be guilty of a misdemeanor”).

. New Jersey’s permit schema as it stands today was last amended in 1981. N.J. Stat. Ann. § 2C:58-4.

. As the Supreme Court of New Jersey has explained:
So concerned is the [New Jersey] Legislature about this licensing process that it allows only a Superior Court judge to issue a permit, after applicants first obtain approval from their local chief of police. In this (as perhaps in the case of election laws) the Legislature has reposed what is essentially an executive function in the judicial branch. We have acceded to that legislative delegation because "[t]he New Jersey Legislature has long been aware of the dangers inherent in the carrying of handguns and the urgent necessity of their regulation....”
In re Preis, 573 A.2d at 151 (quoting Siccardi, 284 A.2d at 538).

. Although the Dissent acknowledges that the "fit” required need only be "reasonable,” in application the Dissent repeatedly demands much more of the "justifiable need” provision than a reasonable fit. For example, the Dissent suggests that New Jersey has failed to show "that the justifiable need requirement is the provision that can best determine whether the individual right to keep and bear arms ‘outweighs’ the increased risk to the community that its members will be injured by handguns.” Dissenting Opinion 457 (emphasis added). Of course, this far overstates what must be shown in order for a challenged regulation to survive intermediate scrutiny.

. See Conn.Gen.Stat. § 29-35; Ga.Code Ann. § 16-11 — 126(h); Haw.Rev.Stat. § 134-9(c); Iowa Code Ann. § 724.4(1), (4)(i); Md.Code Ann., Crim. Law § 4-203(a)(l)(i), (b)(2); Mass. Gen.Laws ch. 269, § 10(a)(2); Minn. Stat. § 624.714(la); N.J. Stat. Ann. § 2C:39-5(b); Okla. Stat. tit. 21, §§ 1289.6, 1290.5(A); Tenn.Code Ann. § 39-17-1351; Utah Code Ann. §§ 53-5-704(l)(c), 76-10-505(l)(b). In California, open carry of a loaded handgun is permitted with a license in rural counties, but prohibited elsewhere. See Cal. Penal Code §§ 25850, 26150(b)(2).