*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KIMBERLY ERIN LANGSTON,

        Defendant-Appellant.

FOR PUBLICATION
April 25, 2024
9:00 a.m.

No. 367270
Van Buren Circuit Court
LC No. 2023-024618-FH

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

FEENEY, J.

This Court granted leave to appeal to address the question whether MCL 750.227 (carrying a concealed pistol without a license) violates the Second and Fourteenth Amendments to the United States Constitution because of the requirement to have a concealed pistol license. We conclude that it does not and affirm the trial court's order denying defendant's motion to quash defendant's bindover on the charge.

On April 30, 2023, South Haven Police Officer Cooper Carns initiated a routine traffic of a vehicle in which defendant was a passenger. It was determined that the driver had an outstanding warrant for a weapons offense and was placed under arrest. Defendant was the passenger in the front seat of the vehicle. When asked whether a purse in the front seat belonged to her, defendant acknowledged that it was her purse. She was then asked whether she had anything in the purse that she was not supposed to have. Defendant responded, "I don't think so," but also stated that she had a gun inside the purse. Defendant also said that she did not have a concealed pistol license (CPL). An unloaded, nine-millimeter pistol and a magazine loaded with four, live .45 mm rounds were recovered from the purse.

Defendant was arrested and charged with one count of carrying a concealed weapon in a motor vehicle without possessing a valid CPL.[1] Defendant initially waived a preliminary examination before she was bound over to the circuit court on this charge; the parties stipulated

---

[1] MCL 750.227(2).

that a motion hearing held on July 5, 2023, would serve as defendant's preliminary examination. At that hearing, defendant conceded that the factual predicate was sufficient to establish probable cause for bindover.

Defendant subsequently moved to dismiss her case, asserting that MCL 750.227 was an unconstitutional violation of her right to bear arms. Specifically, defendant asserted that MCL 750.227 was inconsistent with the United States Supreme Court's decision in *New York State Rifle & Pistol Assoc, Inc v Bruen*.[2] The trial court denied the motion and defendant now pursues this interlocutory appeal.

At the heart of defendant's argument is the assertion that MCL 750.227 does not pass muster under the new standard announced in *Bruen* that the government must demonstrate that the regulation is consistent with our nation's historical tradition of firearm regulation. In response, the prosecution asserts that MCL 750.227 was consistent with the Supreme Court's decision in *Bruen*, which held that "may-issue" regulatory schemes,[3] but not "shall-issue" regulatory schemes,[4] are unconstitutional under the Second Amendment, with Michigan being one of the 43 "shall issue" states noted in the Supreme Court's decision.

We begin by noting what we are not deciding in this case. We are not deciding whether the details of Michigan's statutory scheme for issuing a CPL[5] meet Constitutional muster under the *Bruen* decision. While the responsive briefing, especially that of the amici brief filed by the Attorney General, does address the details of the statutory scheme and its constitutionality, that question is simply not before this Court. Defendant makes no argument that she applied for and

---

[2] *New York State Rifle & Pistol Assoc, Inc v Bruen*, 597 US 1; 142 S Ct 2111; 213 L Ed 2d 387 (2022).

[3] A "may issue" scheme is described as one that has "unusual discretionary licensing" standards and "grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense." *Bruen*, 597 US at 79 (Kavanagh, J., concurring).

[4] "Shall issue" schemes are described as those that "do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Bruen*, 597 US at 38 n 9, quoting *District of Columbia v Heller*, 554 US 570, 635; 128 S Ct 2783; 171 L Ed 2d 637 (2008). These schemes may have requirements such as background checks and safety courses to ensure that those who bear arms are responsible, law-abiding citizens. *Bruen*, 597 US at 38 n 9. See also *Bruen*, 597 US at 80 (Kavanagh, J., concurring) ("Those shall-issue regimes may require a license applicant to undergo fingerprints, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements. . . . Unlike New York's may-issue regime, those shall-issue regimes do not grant open-ended discretion to licensing officials and do not require a showing of some special need apart from self-defense.")

[5] See MCL 28.421 *et seq*.

was denied a CPL or even that it would have been futile for her to have applied for a CPL because there was a provision in the statute that she could not meet.[6]  Rather, it is the very existence of the requirement to have a CPL that defendant argues runs afoul of the Second Amendment under *Bruen*.

With this framing of the question presented, we can easily state what we do hold: assuming, without deciding, that Michigan's statutory scheme for issuing concealed pistol licenses does not contain provisions that violate the Second Amendment as detailed in *Bruen*, and that the process is not abusive in practice, the requirement of MCL 750.227 that a person must possess a valid CPL in order to carry a pistol in an automobile does not violate the Second Amendment.

MCL 750.227 provides as follows:

(1) A person shall not carry a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length, or any other dangerous weapon, except a hunting knife adapted and carried as such, concealed on or about his or her person, or whether concealed or otherwise in any vehicle operated or occupied by the person, except in his or her dwelling house, place of business or on other land possessed by the person.

(2) A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

(3) A person who violates this section is guilty of a felony, punishable by imprisonment for not more than 5 years, or by a fine of not more than $2,500.00.

The majority opinion in *Bruen* clearly holds that the Second and Fourteenth Amendments "protect an individual's right to carry a handgun for self-defense outside the home."[7]  The Court also announced a new approach to assessing whether a statute violates the Second Amendment, holding

that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified

---

[6] In fact, at the time of her arrest, the arresting officer reports that she stated that she did not know that she needed to have a CPL.

[7] *Bruen*, 597 US at 10.

command." *Bruen*, 597 US at 17, *Konigsberg v State Bar of Cal*, 366 US 36, 50, n. 10; 81 S Ct 997; 6 L Ed 2d 105 (1961), [Footnote omitted.]

Defendant argues that a requirement to obtain a license or permit before being able to lawfully carry a concealed firearm is not "consistent with this Nation's historical tradition of firearm regulation." We are bound by the Bruen Court's extensive historical review of firearm regulations, so we need not replicate their efforts. Clearly, the *Bruen* Court placed its imprimatur on there being a permitting process, so long as the process is not abusive of Second Amendment rights.[8]

The *Bruen* opinion clearly draws a distinction between the statutory schemes described as "may issue" from those described as "shall issue."[9] It was the "may issue" scheme of New York that the Court found to be constitutionally offensive. It was New York's requirement that a person must demonstrate a "proper cause" in order to exercise Second Amendment rights that the Court rejected.[10]

Here, the prosecution and the trial court relied upon the following statement in footnote 9 of the Bruen Court's majority opinion:

To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes, under which "a general desire for self-defense is sufficient to obtain a [permit]." *Drake v Filko*, 724 F3d 426, 442 (CA3 2013) (Hardiman, J., dissenting). Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry. *District of Columbia v Heller*, 554 US 570, 635; 128 S Ct 2783; 171 L Ed 2d 637 (2008). Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." *Ibid*. And they likewise appear to contain only "narrow, objective, and definite standards" guiding licensing officials, *Shuttlesworth v Birmingham*, 394 US 147, 151; 89 S Ct 935; 22 L Ed 2d 162 (1969), rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v Connecticut*, 310 US 296, 305; 60 S Ct 900; 84 L Ed 1213 (1940)—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes

---

[8] Defendant urges us to dismiss the Supreme Court's acceptance of "shall issue" permitting schemes as being "inconsistent with the logic of the majority's reasoning in the opinion." While defendant may be willing to dismiss the holdings of the Supreme Court as being logically inconsistent, we are not

[9] The Court identified 43 states, including Michigan, as being "shall issue" states, while only six states and the District of Columbia, are "may issue" states. *Bruen*, 597 US at 13 n 1.

[10] *Bruen*, 597 US at 70.

where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry. *Bruen*, 597 US at 38 n 9.

Defendant dismisses footnote 9 as inconsistent with the remainder of the opinion. We are bound by this language and its meaning could not be clearer: shall-issue permitting schemes are not inherently violative of the Second Amendment. Certainly, the Supreme Court allowed for the possibility that even a particular scheme could be subject to a constitutional challenge and the argument that the scheme, either as written or as implemented, could be abusive of the Second Amendment. But, as we stated at the beginning of our analysis, defendant presents no argument in this case that Michigan's statute, either in its details or in its application, runs afoul of the Constitution.[11]

If the statement in *Bruen*'s majority opinion were not sufficiently explicit, it is echoed in the concurring opinions. In his concurrence, Justice Alito points out that the Court's "holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald v Chicago*, 561 US 742 130 S Ct. 3020; 177 L Ed2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns."[12] And in his concurring opinion, Justice Kavanaugh, joined by The Chief Justice, makes it even clearer, stating that "the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes—known as "shall-issue" regimes—that are employed in 43 States."[13]

Moreover, had the Court in *Bruen* found the existence of licensing schemes to be offensive to the Second Amendment, they could have struck down the New York scheme, and by implication, all of the others, on that basis. And, even if they chose not to do so because that broader issue was not before them, it would seem inapposite for the Court to so clearly and so explicitly make the point that they were not rejecting the "shall issue" statutes of the remaining 43 states.

We hold that a shall-issue statutory scheme requiring a concealed pistol license does not inherently violate the Second and Fourteenth Amendments to the United States Constitution. Any challenges to the specifics of Michigan's concealed pistol license statute are left to another case in

---

[11] Echoing the Supreme Court's footnote 9, we emphasis that we are not determining whether Michigan's scheme does or does not violate the Second and Fourteenth Amendments, either in its terms or in its application. We only conclude that, in the absence of an argument that Michigan's scheme goes beyond that which is necessary to ensure that only responsible, law-abiding citizens obtain concealed pistol licenses, there is no basis to conclude that defendant's prosecution under MCL 750.227 violates her constitutional rights under the Second Amendment.

[12] *Bruen*, 597 US at 72 (Alito, J, concurring).

[13] *Id.*, 597 US at 79 (Kavanagh, J, concurring). The concurrence makes clear that only the "unusual discretionary licensing regimes" of the "may-issue" states are addressed. *Id.*

which such arguments are properly raised. Accordingly, the trial court correctly denied defendant's motion to quash and defendant's prosecution for violation of MCL 750.227 may proceed.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Mark T. Boonstra
/s/ Adrienne N. Young