# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Barris,             :
              Appellant    :
                            :
         v.               :   No. 671 C.D. 2020
                            :   Submitted: February 8, 2021
Stroud Township       :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE MARY HANNAH LEAVITT, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE BROBSON              FILED: May 28, 2021

Jonathan Barris (Barris) appeals from an order of the Court of Common Pleas of Monroe County (trial court), dated May 26, 2020, which granted summary judgment in favor of Stroud Township (Township) and against Barris. In this action, Barris challenges the constitutionality of the Township's Ordinance No. 9-2011 (Ordinance), regulating the discharge of firearms within the Township. For the reasons set forth below, we now reverse the trial court's grant of summary judgment.

## I. BACKGROUND

Barris is the owner of a 4.66-acre tract of land in the Township, located at 7335 Pioneer Lane in Stroudsburg, Monroe County, Pennsylvania. In 2011, the Township enacted the Ordinance, which provides, in pertinent part, as follows:

Section 1: Intent and Purpose.

Due to the density of the population in the Township of Stroud, it is necessary that the discharging of firearms be regulated for the protection of the public health and safety and general welfare of the

residents, property owners, visitors and others within Stroud Township, and that the unauthorized discharge of firearms be prohibited.[1]

. . . .

Section 3:  Firing or discharge restricted.

It shall be unlawful to fire or discharge any firearm within the Township . . . except as provided in Section 4 Exceptions below.

Section 4:  Exceptions.

Exceptions to this Ordinance are as follows, however, in no case shall a firearm be discharged before dawn or after dusk and/or within 150 yards of an adjacent occupied structure, camp or farm, except as provided under paragraphs A., B., indoor facilities under D., and E. below:

A. The use of firearms is permitted when employed by any duly appointed law enforcement officer in the course of his or her official duty.

B. The use of firearms is permitted when necessary as authorized under state and/or federal laws.

C. The use of firearms is permitted when hunting . . . .

D. *The discharging of firearms shall be allowed on indoor or outdoor shooting ranges pursuant to applicable provisions of the Stroud Township Zoning Ordinance, as may be amended, under the supervision of the owner or occupant of that property or his or her duly appointed representative, provided that:*

*1. All shooting ranges shall be constructed and operated in a safe and prudent manner. If standards, regulations and/or recommended procedures for operation are established or promulgated by any recognized body, such as the National Rifle Association or the American Trap Shooting Association, then such standards, regulations and/or procedures shall be adhered to.*

*2. Such range is issued zoning and occupancy permits by the township zoning officer, which*

---

[1] Pursuant to Section 1506 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66506, the Board of Supervisors is authorized to make and adopt ordinances necessary for the proper management, care, and control of the township and the maintenance of the health and welfare of the township and its citizens.

*permits shall specify the area or areas designated for shooting range purposes.*

E. Farmers engaged in "normal agricultural operation" protecting their "agricultural commodity" from animal predators . . . .

F. Members of any organization incorporated under laws of this Commonwealth engaged in target shooting upon the grounds or property belonging to or under the control of such organization or affiliated club, such as the Pennsylvania Federation of Sportsmen's Clubs, Inc.

Section 5: Improper use prohibited.

The careless, reckless or improper use of any firearm tending to imperil or cause danger or harm to personal security or to endanger the property of any person within the Township . . . is prohibited.

. . . .

Section 7: Violations and penalties.

Any person or persons discharging a firearm in violation of any of the provisions of this ordinance shall be subject to a fine of not more than six hundred dollars ($600.) plus court costs, including reasonable attorney fees. If the defendant neither pays nor timely appeals the judgment, the [T]ownship may enforce the judgment pursuant to the applicable rules of civil procedure. Each day's continued violation shall constitute a separate offense. In default in the payment of any fine imposed hereunder, the defendant shall be sentenced to undergo imprisonment for a period not exceeding thirty (30) days. . . .

(Reproduced Record (R.R.) at 12-14 (footnote added) (emphasis added).)

Barris submitted a zoning permit application for a proposed shooting range on his property on December 27, 2012. (R.R. at 47-54.) Relying on the Ordinance and provisions of the Township's Zoning Ordinance (Zoning Ordinance), a Township zoning officer denied the application on January 23, 2013, for the following reasons:

**Section 4.200 [of the Zoning Ordinance]—Types of Uses & Schedule I—Regulations Governing the Use of Land** provides that "shooting range (indoor, outdoor) (7997)" is allowable only as O-1 Open Space and Preservation Zoning District, and S-1 Special and Recreational Zoning District.

The above[-]referenced property, which is located in an R-1 Low Density Residential Zoning District, is not located in [an] O-1 or an S-1 Zoning District. The proposed use, therefore, is not permitted.

Also Zoning Ordinance Section 5.386 contains specific standards for "shooting ranges," which includes a minimum parcel size of five (5) acres for a shooting range use. The above[-]referenced property does not qualify additionally for that reason.

**Ordinance 9-2011—Regulation for Discharging Firearms— Section 4** regulates the discharging of firearms within the Township. Section 4 of this Ordinance is entitled "exceptions, . . ." [and] it . . . provide[s] that "in no case shall a firearm be discharged . . . within 150 yards of an adjacent occupied structure. . . ."

The proposed shooting range does not meet the setback requirement from the occupied dwelling structure on the above referenced property.

**Ordinance 9-2011—Regulation for Discharging Firearms— Section 4(D)(1)** provides that all shooting ranges must comply with the standards and regulations promulgated by either the National Rifle Association or the American Trap Shooting Association.

The Zoning Application submission did not include standards and regulations specific to the firearms to be discharged.

(Original Record (O.R.), Item No. 70 at 3, Trial Ct. Op. 5/26/20 at 3 (citing Zoning Officer Denial Letter, dated January 23, 2013)). Barris did not appeal the denial to the Township's Zoning Hearing Board to review the determination of the Hearing Officer. (*Id*.)

Instead, Barris filed a complaint (Complaint) in the trial court in September 2015, seeking declaratory and injunctive relief against the Township and claiming that the Ordinance effectively prohibited him from using a portion of his property within the Township as a private shooting range. (O.R., Item No. 4, Complaint ¶¶ 34-61.) The Complaint claimed that the Ordinance: (1) violates the

4

Second Amendment to the United States Constitution;[2] (2) violates Article I, Section 21 of the Pennsylvania Constitution;[3] (3) is preempted by Section 6120 of the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act), 18 Pa. C.S. § 6120;[4] and (4) is preempted by Sections 1 and 2 of what is commonly referred to as the range protection statutes, Act of June 2, 1998, P.L. 452, *as amended*, 35 P.S. §§ 4501-4502.[5]  (O.R., Item No. 4, Complaint ¶¶ 5-29, 62-123.)  In response, the Township filed preliminary objections in the nature of a demurrer—*i.e.*, challenging the legal sufficiency of the Complaint.

The trial court sustained the Township's preliminary objections and dismissed Barris's Complaint in its entirety.  The trial court concluded that the Ordinance was not preempted by the Firearms Act, because the Ordinance regulates only the "discharge" of firearms within the Township, which the trial court concluded was a subject omitted from the scope of the Firearms Act.  The trial court also concluded that the Ordinance was not preempted under Pennsylvania's range protection statutes because those statutes only protect owners of ranges from civil actions or criminal

---

[2] The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

[3] Article I, Section 21 of the Pennsylvania Constitution provides for the "right of the citizens to bear arms in defense of themselves and the State shall not be questioned." PA. CONST. art. I, § 21.

[4] Section 6120(a) of the Firearms Act provides:

> (a) General Rule.--No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

[5] The range protection statutes, located in Chapter 23A of Title 35, Health and Safety, provide noise and nuisance exemptions for shooting ranges.

prosecutions relating to noise, noise pollution, and nuisance. Given that the Ordinance does not purport to regulate noise, noise pollution, or nuisance, the trial court concluded that it was not in conflict with the range protection statutes and dismissed the claims.

The trial court, in dismissing Barris's state and federal constitutional claims, opined that neither the Second Amendment nor the Pennsylvania Constitution have been construed "to grant an individual the right to discharge a firearm whenever he or she pleases." (O.R., Item No. 16 at 20.) Similarly, the trial court opined that because the Ordinance regulates the discharge of firearms for the safety of individuals within the Township and Barris's "firearms are not being taken away from him," the Ordinance passes muster under *District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller*), wherein the United States Supreme Court held that a handgun ban violated the rights conferred by the Second Amendment. To the extent Barris contends that the Ordinance restricts his ability to defend himself in his home, the trial court dismissed the claim and noted that the Ordinance expressly allows discharge of firearms for self-defense as authorized under Pennsylvania law.

Barris appealed the decision to this Court, arguing, in part, that the trial court should have afforded him the opportunity to amend his Complaint, rather than dismiss it with prejudice. In *Jonathan Barris v. Stroud Township* (Pa. Cmwlth., No. 218 C.D. 2016, filed November 17, 2017) (en banc) (*Barris I*), we affirmed the trial court's dismissal of Barris's claims alleging violations of the Firearms Act and the Pennsylvania range protection statutes. We vacated the trial court's order as it related to Barris's constitutional challenge to the Ordinance and remanded the matter. We wrote that the trial court

> failed to conduct any constitutional analysis of the gist of Barris's claim—*i.e.*, that the Ordinance, which restricts his ability to practice

6

firing his firearms on his property (an activity that he lawfully engaged in prior to the passage of the ordinance at issue), unconstitutionally infringes on his rights under both the Second Amendment [of the United States Constitution] and Article I, Section 21 of the Constitution of Pennsylvania either facially or as applied.

Because the trial court's opinion in support of its dismissal . . . of the [C]omplaint lacked the necessary constitutional analysis, we must vacate the portion of the trial court's order . . . and remand to the trial court to further consider Barris's constitutional challenges. As we are remanding the matter, we also direct the trial court on remand to afford Barris a reasonable period within which to file an amended complaint . . . .

*Barris I*, slip op. at 8, 9. We remanded the case to the trial court for additional proceedings.

On remand, Barris then filed an amended complaint (Amended Complaint) in January 2018, again seeking declaratory and injunctive relief against the Township and claiming that the Ordinance violates his rights under: (1) the Second Amendment to the United States Constitution, (2) the Fourteenth Amendment to the United States Constitution,[6] (3) Article I, Section 21 of the Pennsylvania Constitution, and (4) Article I, Section 26 of the Pennsylvania Constitution.[7] (R.R. at 28-34.) In the Amended Complaint, Barris averred, in part, that since 2010, he has constructed, maintained, and used a home shooting range on his 4.66-acre property, zoned R-1, *i.e.*, low-density residential. (*Id.* at 29.) He also averred that, until enactment of the Ordinance on December 6, 2011, his

---

[6] The due process clause of the Fourteenth Amendment provides that "[n]o [s]tate shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

[7] Article I, Section 26 of the Constitution of Pennsylvania provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, § 26.

7

"firearm discharge on said range was deemed lawful and safe by the Township's police and otherwise not in violation of any section of the laws of Pennsylvania or other federal or state governmental codes or regulations." (*Id.* ¶ 9.) He characterized the Ordinance as "outlaw[ing] firearm practice and safe shooting ranges on residential property and limit[ing] firearm discharge to large-scale commercial and/or private enterprises or to affluent persons or entities," presumably due to the fact that it limits shooting ranges to properties consisting of at least five acres and located in the Open Space and Preservation Zoning District, O-1, and Special and Recreational Zoning District, S-1.[8] (*Id.* at 30 ¶11.)

Following the close of the pleadings, the parties filed cross-motions for summary judgment, which the trial court denied because there remained a genuine issue of material fact that affected the appropriate standard of review. Thereafter, the Township filed a second motion for summary judgment, which the trial court granted. The trial court entered judgment in favor of the Township and against Barris by order dated May 26, 2020. This appeal followed.

## II. ISSUES

On appeal,[9] Barris argues that the trial court erred when it granted the Township's second motion for summary judgment and denied his motion for

---

[8] In the Amended Complaint, Barris also averred that, on May 12, 2012, while discharging firearms at his home shooting range, the Stroud Area Regional Police Department informed him that, as a result of the passage of the Ordinance, he was now prohibited from so discharging his firearms, subject to civil fines of up to $600 with the failure to pay subject to incarceration for up to thirty days. (R.R. at 30.)

[9] This Court's review of a trial court's order granting a motion for summary judgment is limited to considering whether the trial court erred as a matter of law or abused its discretion. *Lambert v. Katz*, 8 A.3d 409, 413 n.3 (Pa. Cmwlth. 2010), *overruled on other grounds by Cagey v. Cmwlth.*, 179 A.3d 458 (Pa. 2018). A court may grant a motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment

summary judgment. First, Barris argues that the trial court erred when it determined that the Township's Ordinance did not violate his Second Amendment right to conduct target practice on his residential property. Second, Barris argues that the trial court erred when it determined that the Township's Ordinance did not violate his Fourteenth Amendment substantive due process rights to use his residential property for target practice. Third, Barris submits that the trial court erred when it determined that the Township did not violate his Fourteenth Amendment procedural due process rights when it passed the Ordinance. Finally, Barris argues that the trial court erred in concluding that he failed to exhaust his administrative remedies in challenging the constitutionality of the Ordinance.[10]

## III.  DISCUSSION

"The Second Amendment provides: 'A well[]regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *United States v. Marzzarella*, 614 F.3d 85, 88 (3d Cir. 2010) (quoting U.S. CONST. amend. II). It confers an individual the right to keep and bear arms, at least for the core purpose of allowing law-abiding responsible citizens to "use arms in defense of hearth and home." *Id*. (citing *Heller*, 554 U.S. at 635). It applies to the states and local governments through the Due Process Clause of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

---

as a matter of law. *Id*. (citing *Bronson v. Horn*, 830 A.2d 1092, 1094 (Pa. Cmwlth. 2003), *aff'd*, 848 A.2d 917 (Pa. 2004), *cert. denied*, 543 U.S. 944 (2004)). The right to judgment must be clear and free from doubt. *Id*. In reviewing the granting of a motion for summary judgment, this Court must "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id*. (quoting *Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied*, 536 U.S. 938 (2002)).

[10] We note Barris has not argued any claims arising under the Pennsylvania Constitution; accordingly, we consider those claims abandoned in this appeal.

9

There is a strong presumption in the law that all legislative enactments are constitutional. *Caba v. Weaknecht*, 64 A.3d 39, 49 (Pa. Cmwlth.), *appeal denied*, 77 A.3d 1261 (Pa. 2013). To prevail in this case, Barris must show that the legislative enactment "clearly, palpably, and plainly" violates the United States Constitution. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Cmwlth.*, 877 A.2d 383, 393 (Pa. 2005) (emphasis omitted). "All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Caba*, 64 A.3d at 49. There are two ways to challenge the constitutionality of a legislative enactment: either the enactment is unconstitutional on its face or as applied in a particular circumstance. *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (en banc).

A facial attack tests a law's constitutionality based on its text alone and does not consider the facts and circumstances of a particular case. *Peake v. Cmwlth.*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (en banc) (adopting "plainly legitimate sweep" standard for evaluating facial constitutional challenges). To prevail, the challenger must show that "its constitutional deficiency is so evident that proof of actual unconstitutional applications is unnecessary." *Id*.

As set forth above, Section 3 of the Township's Ordinance provides: "It shall be unlawful to fire or discharge any firearm within the [Township] except as provided in [Section 4] Exceptions below." (R.R. at 12.) Section 4 of the Ordinance sets forth exceptions (A) through (F) to the prohibition on the discharge of a firearm, as follows: (A) law enforcement activities; (B) situations when necessary under state or federal laws; (C) hunting; (D) indoor and outdoor shooting ranges permitted under the Zoning Ordinance; (E) farmers; and (F) sportsmen's clubs. (R.R. at 13.) Section 4 of the Ordinance also places time and proximity limitations on certain of

10

the exceptions. Specifically, it limits the use of a firearm in connection with the exceptions for hunting, outdoor shooting ranges, and sportsmen's clubs by prohibiting the discharge of a firearm: (1) before dawn or after dusk; and (2) within 150 yards of an adjacent occupied structure, camp, or farm. (*Id.*) The dusk-to-dawn and 150-yard limitations do not apply to any of the other exceptions, those being law enforcement activities, when necessary under the law, indoor shooting ranges permitted under the Zoning Ordinance, and farmers. Furthermore, given that the time and proximity limitations are set forth as part of the exceptions and not in the general prohibition in Section 3 of the Ordinance on the discharge of a firearm within the Township, they do not apply as general limitations on the discharge of a firearm in the Township.[11] Thus, they apply only to hunting, outdoor shooting ranges permitted under the Zoning Ordinance (*i.e.*, those ranges located in the O-1 or S-1 zoning districts pursuant to the Zoning Ordinance), and sportsmen's clubs— not to Barris's property located outside the O-1 and S-1 zoning districts. Additionally, we note that not only does the Ordinance's reference to the Zoning Ordinance have the effect of restricting shooting ranges to parcels in the O-1 or S-1 zoning districts only, but it also further limits the parcels within those districts that may be used as a shooting range by requiring that the parcel consist of at least five acres.

Thus, if an individual wants to establish an indoor or outdoor shooting range on his property, he may do so in two zoning districts—O-1 and S-1—provided that

---

[11] The interpretation of the Ordinance as applying the dusk-to-dawn and 150-yard limitations to *only* exceptions makes sense, because the exceptions in Section 4 of the Ordinance constitute the *only* circumstances under which an individual may lawfully discharge a firearm within the Township. Given that there is an outright ban on the discharge of a firearm unless an exception applies, there would be no reason to apply the time and proximity limitations applicable to the exceptions in any other context or circumstance.

11

the minimum parcel size requirement of at least five acres is met.[12]  (R.R. at 18.) Simply stated, individuals with property in some zoning areas cannot shoot targets on their property at all, regardless of the size of the property and location or configuration of the shooting range.  Target shooting in the Township is expressly limited to indoor and outdoor shooting ranges located in specific zoning districts of the Township.

In determining the merits of a Second Amendment challenge, numerous circuit courts of appeals have used a two-step framework. *See Ezell v. City of Chicago*, 651 F.3d 684, 702-704 (7th Cir. 2011) (*Ezell I*); *Marzzarella*, 614 F.3d at 89; *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010).[13]  First, a court must "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Ezell I*, 651 F.3d at 703; *Marzzarella*, 614 F.3d at 89.  The United States Court of Appeals for the Seventh Circuit, using the United States Supreme Court's First Amendment free-speech jurisprudence as an example for this kind of threshold "scope" inquiry, reasoned:

---

[12] Zoning Ordinance Section 5.386 provides:

**Commercial Outdoor Sports (SIC 7941); Shooting Ranges (SIC 799); and Outdoor Exhibitions, Assembly for Sports, Entertainment and Amusements**. This use is permitted as set forth in Schedule I.  The following standards, requirements and criteria shall apply:  A minimum parcel size of five (5) acres is required for development or operation of these uses.  Minimum lot width shall be two hundred and fifty (250') feet.  These activities shall be developed and operated so as to create no hazards or safety problems for adjacent properties . . . .

(O.R., Item No. 38 at 19.)

[13] Though the Commonwealth Court, in its application of federal substantive law, is not bound by the decisions of federal district courts, federal circuit courts, or the courts of other states, it may cite such decisions when they have persuasive value. *Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1186 (Pa. Cmwlth. 2019).

> The [Supreme] Court has long recognized that certain "well-defined and narrowly limited classes of speech"—*e.g.*, obscenity, defamation, fraud, incitement—are categorically "outside the reach" of the First Amendment. When the [Supreme] Court has "identified categories of speech as fully outside the protection of the First Amendment, it has not been on the basis of a simple cost-benefit analysis." Instead, some categories of speech are unprotected as a matter of history and legal tradition. So too with the Second Amendment. *Heller* suggests that some federal gun laws survive Second Amendment challenge because they regulate activity falling outside the terms of the right as publicly understood when the Bill of Rights was ratified. . . . Accordingly, if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 or 1868—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.

*Ezell I*, 651 F.3d at 702-03 (citations omitted). If the challenged law does not impose a burden within the scope of the Second Amendment's guarantee, then the inquiry is complete. *Id*. at 704.

Conversely, if there is a burden on the Second Amendment, then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights under some form of "means-end" scrutiny. *Ezell I*, 651 F.3d at 703. The United States Supreme Court made "it clear that the deferential rational-basis standard is out, and with it the presumption of constitutionality." *Id*. at 706 (citing *Heller*, 554 U.S. at 628 n.27). The Seventh Circuit, again using the United States Supreme Court's First Amendment free-speech jurisprudence as an example, recognized:

> In free-speech cases, the applicable standard of judicial review depends on the nature and degree of the governmental burden on the First Amendment right and sometimes also on the specific iteration of the right. For example, "[c]ontent-based regulations are presumptively invalid," and thus get strict scrutiny, which means that the law must be narrowly tailored to serve a compelling government interest[.] Likewise, "[l]aws that burden political speech are subject to strict

13

scrutiny." On the other hand, "time, place, and manner" regulations on speech need only be "reasonable" and "justified without reference to the context of the regulated speech.". . .

. . . .

. . . . [R]estrictions imposed on adult bookstores are reviewed under an intermediate standard of scrutiny that requires the municipality to present "evidence that the restrictions actually have public benefits great enough to justify any curtailment of speech. . . ."

Labels aside, we can distill this First Amendment doctrine and extrapolate a few general principles to the Second Amendment context. First, a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximately to the core of the right.

*Ezell I*, 651 F.3d at 707-08.

In *Ezell I*, the Seventh Circuit found that the City of Chicago's firing range ban that prohibited "'law[-]abiding, responsible citizens' of Chicago from engaging in target practice in the controlled environment of a firing range . . . [was] a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Id*. at 708-09. The circuit court determined that the "City must establish a close fit between the range ban and the actual public interests it serves, and also that the public's interests are strong enough to justify so substantial an encumbrance on individual second amendment rights." *Id*. at 709. The circuit court held that the core individual right of armed defense includes a corresponding right to acquire and maintain proficiency in firearm use through target practice at a range, and the right to possess firearms for protection would not mean much without the training and practice that make it effective. *Id*. at 704. The circuit court reversed

14

the district court's order and remanded the case with instructions to enter a preliminary injunction for the plaintiffs. *Id*. at 711.

Six years later, in *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) (*Ezell III*), the Seventh Circuit reviewed three residents' challenges to the City of Chicago's modifications of its gun range ban that "established a permit regime for lawful gun possession and required one hour of range training as a prerequisite to a permit, but prohibited firing ranges everywhere in the city."[14] *Ezell III*, 846 F.3d at 890. At issue in that case was the constitutionality of zoning restrictions: (1) allowing gun ranges only as special uses in manufacturing districts; and (2) prohibiting gun ranges within 150 feet of another range or within 500 feet of a residential district, school, place of worship, and multiple other uses. *Id.* The district court had held that the zoning restrictions severely limited where shooting ranges could be located and required the City to establish a close fit between the restriction and the public interests they serve. *Id*. at 891. The district court, without addressing the 100-foot distancing restriction, had upheld the 500-foot distancing restrictions because it was "significantly less burdensome" when considered standing alone, and reasoned that it was similar to a "law forbidding the carrying of firearms in sensitive places such as school and government buildings." *Id*. Both sides appealed the decision. *Id*.

The Seventh Circuit, prior to addressing the parties' claims, noted "for good measure that most other circuits have adopted the framework articulated in *Ezell I* and require some form of heightened scrutiny when evaluating the government's

---

[14] We note that between 2011 and 2017 the City of Chicago replaced the range ban with an "elaborate scheme of regulations governing shooting ranges . . . [and] [l]itigation resumed, prompting the City to rewrite or repeal parts of the new regime. [A] district judge invalidated some of the challenged regulations and upheld others." *Ezell III*, 846 F.3d at 890 (citing *Ezell v. City of Chicago*, 70 F. Supp. 3d 871, 882-92 (N.D. Ill. 2014) (*Ezell II*)).

15

justification for a law challenged on Second Amendment grounds." *Id*. at 893. The circuit court then dismissed the district court's "sensitive places" approach when it upheld the 500-foot restriction, reasoning that the two zoning restrictions at issue are a "single regulatory package for purposes of Second Amendment scrutiny." *Id*. at 894.

The Seventh Circuit next reviewed the sufficiency of the City's proffered justification for regulating firearms ranges using a heightened scrutiny standard—*i.e.*, that firing ranges: (1) attract gun thieves; (2) cause airborne lead contamination; and (3) carry a risk of fire. *Id*. The circuit court noted, however, the "City continues to assume, as it did in *Ezell I*, that it can invoke these interests as a general matter and call it a day." *Id*. The circuit court then reviewed the evidence the City offered to support its justifications and opined:

> We explained in *Ezell I* that the City cannot defend its regulatory scheme "with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance." To borrow from the free-speech context "there must be *evidence*" to support the City's rationale for the challenged regulation; "lawyers talk is insufficient." Here, as in *Ezell I*, the City's defense of the challenged zoning rules rests on sheer "speculation about accidents and theft.". . . That's not nearly enough to satisfy its burden. The manufacturing and distancing restrictions are unconstitutional.

*Id*. at 896 (emphasis in original) (citations omitted). The circuit court concluded that the City has room to regulate the construction and operation of firing ranges to address genuine risks to public and health safety, but the City must justify its regulation and did not do so in its case under an intermediate level of scrutiny. *Id*. at 898.

While Barris strongly relies on *Ezell I* and *Ezell III* to support his arguments, the Township directs our attention to a recent decision of the United States Court of Appeals for the Third Circuit. The Third Circuit, in *Association of New Jersey Rifle*

16

*and Pistol Clubs Incorporated v. New Jersey*, 910 F.3d 106 (3d Cir. 2018) (*New Jersey Rifle*), comprehensively addressed the legal status of the Second Amendment in this circuit. In June 2018, New Jersey passed a law restricting the magazine capacity to ten rounds of ammunition, excluding from the ban active law enforcement and military members authorized to possess and carry a handgun.[15] *New Jersey Rifle*, 910 F.3d at 110-11. The New Jersey Rifle and Pistol Clubs and two of its members had filed a civil rights action that, in pertinent part, alleged that the statute violated the Second Amendment. *Id*. at 111.

Following a three-day evidentiary hearing on the plaintiffs' preliminary injunction request, a federal district court first determined that the ban of magazines holding more than ten rounds implicated Second Amendment protections. *Id*. at 111, 113. The district court then determined that, because the statute places a minimal burden on lawful gun owners, it should be examined using intermediate scrutiny. *Id*. at 114. The district court reviewed evidence that the smaller number of rounds in the magazine led to a delay in reloading the firearm, which provided an opportunity for potential victims to escape or a bystander to intercede in the event. *Id*. The district court concluded that the magazine limitation was reasonably tailored to achieve New Jersey's goal of reducing the number of casualties and fatalities in a mass shooting. *Id*. Consequently, New Jersey met its burden under the intermediate scrutiny standard, and the district court denied the motion for a preliminary injunction. *Id*.

On appeal, the Third Circuit applied the two-step framework it established in *Marzzarella* (*i.e.*, the same test utilized in the *Ezell I* and *Ezell III* cases).

---

[15] We note that "[a] magazine is an implement that increases the ammunition capacity of a firearm." *New Jersey Rifle*, 910 F.3d at 112.

17

The circuit court agreed with the district court that the regulation of magazines imposed a burden on conduct falling within the scope of the Second Amendment's guarantee. *Id*. at 116. The circuit court, in reaching this conclusion, considered whether the type of firearm at issue is commonly owned and is typically possessed by law-abiding citizens for lawful purposes. *Id*. at 116.

The Third Circuit then determined the appropriate level of scrutiny that must be applied, noting the applicable level of scrutiny is dictated by whether the challenged regulation burdens the core Second Amendment right. *Id*. at 117. If the core Second Amendment right is burdened, then strict scrutiny applies; otherwise, intermediate scrutiny applies. *Id*. The circuit court reasoned that the New Jersey statute did not severely burden the plaintiffs' core Second Amendment right to self-defense in the home for five reasons: (1) the restriction did not categorically ban a class of firearms, only the number of rounds the magazines could hold; (2) the magazines did not relate to handguns, which was the "quintessential self-defense weapon" in home self-defense; (3) the prohibition did not take firearms out of the hands of law-abiding citizens and had no impact on the many other firearm options that individuals could use to defend themselves in their homes; (4) the statute did not render the firearm at issue incapable as operating as intended; and (5) the possession of a firearm in the home for self-defense is not a protected form of possession under all circumstances, otherwise, any type of firearm possessed in a home would be protected merely because it could be used for self-defense. *Id*. at 118. Accordingly, the circuit court applied an intermediate level of scrutiny. *Id*.

The Third Circuit then explained that "'under intermediate scrutiny[,] the government must assert a significant, substantial, or important interest;

18

there must be a reasonable fit between the asserted interest and the challenged law, such that the law does not burden more conduct than is reasonably necessary.'" *Id*. at 119 (quoting *Drake v. Filko*, 724 F.3d 426, 439 (3d Cir. 2013)). The circuit court cautioned, however, that the law need not be the least restrictive means of achieving that interest. *Id*. The circuit court reasoned that the State of New Jersey undoubtedly had a significant, substantial, and important interest in protecting its citizens' safety that included reducing the lethality of active shooter and mass shooting incidents. *Id*. The circuit court explained that prohibiting the use of magazines holding more than ten rounds reduced the number of shots fired and the resulting harm and that changing or reloading weapons during a mass shooting incident provided a pause and an opportunity for bystanders or police to intervene and for victims to flee. *Id*. at 120. The circuit court concluded that the statute survived intermediate scrutiny and upheld the district court's decision. *Id*. at 122.

Generally, we are persuaded by the Third Circuit's and Seventh Circuit's interpretation of Second Amendment jurisprudence and adopt the two-step framework in determining whether a constitutional violation occurred in this case. Our first step in reviewing the constitutionality of the Ordinance is to determine whether the Ordinance imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If there is a burden, we must then determine the appropriate level of scrutiny to apply and weigh the strength of the government's justification for restricting or regulating the exercise of an individual's Second Amendment rights. *Ezell I*, 651 F.3d at 703.

As to the first step of the analysis—whether a Second Amendment right is burdened—the Seventh Circuit, in *Ezell I*, determined that "the right to maintain proficiency in firearm use[ is] an important corollary to the meaningful exercise of

19

the core right to possess firearms for self-defense." *Ezell I*, 651 F.3d at 708-09. Here, the Ordinance outright prevents individuals such as Barris from target practicing on their residential property unless they live in two specific zoning districts, regardless of the characteristics of their residential property. The scope of the Ordinance, therefore, imposes a burden on the right to maintain proficiency in firearm use, which triggers Second Amendment scrutiny.

As to the second step of the analysis—the level of scrutiny to be applied and the strength of the government's justification—the burden on Barris concerns his ancillary right under the Second Amendment to maintain proficiency in his firearm use. Notably, the Ordinance does not concern a core individual right under the Second Amendment to keep and bear arms and allow law-abiding citizens to use arms in defense of hearth and home. Rather, the Ordinance burdens his ability to target practice on his property to maintain that proficiency. Thus, we will apply an intermediate scrutiny standard requiring the Township to assert a significant, substantial, or important interest for the Ordinance, and there must "be a reasonable fit between the asserted interest and the challenged [ordinance], such that the [ordinance] does not burden more conduct than is reasonably necessary." *See New Jersey Rifle*, 910 F.3d at 119 (quoting *Drake*, 724 F.3d at 439).

The Township argues that there are four reasons that the Ordinance is constitutional using an intermediate scrutiny standard. (Township's Brief at 11-13.) First, the challenged Ordinance allows firearm ranges in both the O-1 and S-1 zoning districts, where, according to the Township, "[p]otentially, 82% of the area in the two zoning districts is available, constituting 259 lots." (*Id.* at 11.) The Township submits that the land available is "markedly greater than the 2.2 percent which troubled the Seventh Circuit in [*Ezell III*] and it represents a real and substantial

20

opportunity to construct a shooting range on any one of the available lots within a few minutes of his home." (*Id.* at 12.) Second, the Township submits that it has a reasonable interest in public safety, and "that interest in public safety is well served if its citizens are not shot by accident, especially those visiting the mall nearby." (*Id.*) Third, the "same logic applies . . . against discharging firearms within [150] yards of an adjacent occupied structure" and "the freedom not to be accidently shot in one's home by a neighbor blazing away on an unsafe shooting range is a legitimate public concern." (*Id.*) Finally, "the Ordinance requires that firing ranges comply with [National Rifle Association (NRA)] standards . . . [and] [a]pplying the technical standards of the [NRA] to the construction of the shooting range is not only constitutionally defensible, it is a wise and prudent exercise of the government's obligation to protect the safety of its citizens." (*Id.* at 13.)

The trial court, when it granted the Township's second motion for summary judgment, concluded that public safety is a significant, substantial, and important interest, and correctly focused on whether the "challenged [O]rdinance is a reasonable fit such that the law does not burden more conduct than necessary." (O.R., Item No. 70 at 11.) The trial court found that the lots in zoning districts O-1 and S-1 provided 8,671.55 acres of area for a shooting range. (*Id.*) The trial court found that "all the lots in excess of six acres would meet the 150-yard separation requirement for a gun range, and many of the five[-]acre lots would." (*Id.*) The trial court found that the Ordinance's restriction on target practicing related to the "important government interest of protecting [T]ownship residents from being injured by irresponsible use of firearms" and concluded that the Ordinance is not facially unconstitutional for violating the Second Amendment. (*Id.* at 12.) While we do not disagree that the reasons provided are important considerations,

21

we disagree with the trial court's conclusion that the Ordinance is facially constitutional. Our concern is that, on its face, the Ordinance burdens more conduct than is necessary to meet the important government interests in this case.

We note that municipalities, through their comprehensive plans and zoning ordinances, routinely prescribe the manner in which property may be used by designating the zoning districts in which certain broad categories of uses may occur. For instance, zoning ordinances generally allow for a variety of residential, commercial, industrial, and agricultural uses, and they specify the zoning districts in which each use may occur. Within these broad zoning categories, municipalities will often develop more specific subcategories of zoning districts that more narrowly limit the type of uses that are allowable therein. Simply because a municipality designates that property in a certain zoning district may be used for a particular use does not mean that individuals cannot engage in an activity encompassed by a use category on a personal level elsewhere in the municipality. For instance, simply because a municipality may designate a particular zoning district for commercial car washing activities does not mean that individuals may not engage in the personal activity of washing their own cars in the driveways of their residential properties.

Here, the Township, in its zoning plan, has specified that shooting ranges may be located in the O-1 and S-1 zoning districts. Thus, if a person or an entity seeks to operate a shooting range in the Township—whether it be a commercial range, private gun club, or otherwise—it can do so in those zoning districts, provided that other conditions are satisfied. To be clear, however, this case is not a challenge to the "use" of a property in the traditional zoning sense or an appeal of the denial of a zoning permit. Rather, this matter is a challenge to an ordinance set forth in Chapter 6 of the Stroud Township Code of Ordinances, pertaining to Conduct, and

22

not a challenge under Chapter 27 of the Stroud Township Code of Ordinances (*i.e.*, the Township's Zoning Ordinance), pertaining to Zoning.

The Township, in enacting the Ordinance, opted to prohibit personal target shooting throughout much of the Township by restricting the exercise of the Second Amendment right to maintain firearm proficiency to just two zoning districts—the O-1 and S-1 zoning districts—thereby establishing an outright ban on this conduct in all other zoning districts. The Township has not justified why an outright ban was necessary for the remainder of the Township in order to protect the public. Instead, the Township appears to defend its decision to outright ban target shooting of any kind in any district other than the two identified above by noting that those districts consist of 8,671.55 acres. The ability under the Township's Zoning Ordinance to develop properties in those districts as shooting ranges does not somehow allow the Township to overcome the deficiencies in the Ordinance. We do not believe that an individual's right under the Second Amendment to maintain proficiency in firearm use via a personal shooting range on one's property should be contingent on owning property or residing in zoning districts O-1 and S-1.

In summary, the conduct Ordinance here fails to pass constitutional muster. The Ordinance imposes a burden on the Second Amendment right to maintain proficiency in firearm use by essentially imposing an *outright ban* on target shooting everywhere in the Township except two specific zoning districts. The Township did not meet its burden under the intermediate scrutiny standard to justify such an outright ban on personal shooting ranges at one's residence, because it did not establish that the Ordinance "does not burden more conduct than is reasonably necessary." *See New Jersey Rifle*, 910 F.3d at 119 (quoting *Drake*, 724 F.3d at 439).

23

In reaching our conclusion, we do not discount the importance of regulating target shooting in a residential environment and the important policy reasons for the Ordinance, nor are we holding that every person needs to have the ability to have a personal shooting range on his property. To the contrary, a municipality clearly may regulate such activity. This Court has recognized that Second Amendment rights are "not unlimited" and "may be restricted in the exercise of police power for the good order of society and [the] protection of citizens." *Perry v. State Civ. Serv. Comm'n*, 38 A.3d 942, 955 (Pa. Cmwlth. 2011). Yet, as we have previously held:

> It must be remembered . . . that the police power delegated by the state is not infinite and unlimited. The action taken thereunder must be reasonable, it must relate to the object it purports to carry out, and it must not invade the fundamental liberties of the citizens. It must also be remembered that even legitimate legislative goals cannot be pursued by means which stifle fundamental personal liberty when goals can be otherwise more easily achieved.

*Commonwealth v. Sterlace*, 354 A.2d 27, 29 (Pa. Cmwlth. 1976) (holding ordinance purporting to restrict door-to-door distribution of all advertising, both commercial and noncommercial, was unconstitutional as being unduly burdensome restriction on distributors' First Amendment constitutional rights) (citing *Warren v. Philadelphia*, 115 A.2d 218 (Pa. 1955) (holding rent and eviction control ordinance designed for health and welfare of its citizens was valid exercise of police power)).

Thus, our decision does not in any way prohibit the Township from enacting an ordinance targeted to protecting the public, provided that it satisfies the intermediate scrutiny test as described above. As we have repeatedly stated throughout this opinion, there must "be a reasonable fit between [the] asserted interest and the challenged [ordinance], such that the [ordinance] does not burden more conduct than is reasonably necessary." *See New Jersey Rifle*, 910 F.3d at 119

24

(quoting *Drake*, 724 F.3d at 439). For instance, the Township may determine that the goal of protecting the public could be met by imposing requirements on personal shooting ranges, such as a minimum lot size, setback requirements, safety requirements (*e.g.*, targets and backstops be built and used according to certain standards), and requirements on the configuration or positioning of a shooting range on the property to account for distances between buildings or other obstacles beyond the target.[16] The ordinance could require that the Township or law enforcement inspect the personal shooting range and approve it annually to ensure that the safety requirements are being met. If the Township chooses to enact a new ordinance that imposes reasonable limitations in the forms described above, it is entirely possible that the ordinance could pass the intermediate scrutiny test.[17] In order to do so, however, the Township must balance the constitutional rights of individuals to

---

[16] Here, as discussed above, the Ordinance imposes additional limitations on hunting, outdoor shooting ranges permitted under the Zoning Ordinance (*i.e.*, shooting ranges in the O-1 and S-1 zoning districts), and sportsmen's clubs that a firearm may not be discharged before dawn or after dusk or within 150 yards of a structure, farm, or camp. Furthermore, the Zoning Ordinance (not the Ordinance itself) requires a parcel in those districts to consist of at least five acres if it is to be used as a shooting range. Although the Ordinance does not apply those time and proximity limitations nor the Zoning Ordinance's five-acre parcel limitation throughout the Township, it is conceivable that such time, proximity, and property-size limitations could pass constitutional muster. Those limitations, however, as currently set forth in the Ordinance and Zoning Ordinance do not apply to Barris's conduct or property.

[17] We note that it is not uncommon for municipalities to regulate personal recreational activities on residential properties. For instance, while individuals swim at commercial swimming pools or private swim clubs, some individuals install a swimming pool on their residential properties. Municipalities often regulate that activity by requiring the residential swimming pool to have a fence of a certain height and/or type of construction with a lock in order to protect against accidental drownings. *See* Stroud Township Zoning Ord. § 27-508(1)(E). While shooting firearms on a residential property presents different dangers than the use of swimming pools, as with swimming pools those dangers can be mitigated to some extent by requiring safety features to be incorporated into residential target ranges.

25

maintain proficiency in firearm use through firearm-related activity on their properties with the Township's important goals of keeping the general public safe.[18]

## IV. CONCLUSION

For the reasons discussed above, we conclude that the trial court erred as a matter of law when it determined that the Ordinance did not violate Barris's Second Amendment rights. Accordingly, we reverse the trial court's order granting summary judgment in favor of the Township and against Barris.

_____
P. KEVIN BROBSON, President Judge

---

[18] In light of our decision, we need not address Barris's due process claims, nor do we need to address in great detail the Township's exhaustion of administrative remedies argument. As for the latter, we note:

> [T]he exhaustion of administrative remedies is not required where a statutory scheme's constitutionality or validity is being challenged. [*Nat'l*] *Solid Waste* [*Mgmt. Ass'n*] *v. Casey*, . . . 580 A.2d 893[, 897] ([Pa. Cmwlth.] 1990). In order to qualify under the exception "the attack must be made to the constitutionality of the statute or regulation as a whole and not merely to how the statute or regulation has been applied in a particular case." *Barr v. State Real* [*Est. Comm'n*], . . . 532 A.2d 1236[, 1238] ([Pa. Cmwlth.] 1987), [(citing *St. Clair v.* [*Pa. Bd. of Prob. &*] *Parole*, . . . 493 A.2d 146, 153 ([Pa. Cmwlth.] 1985))].

*Giffin v. Chronister*, 616 A.2d 1070, 1073 (Pa. Cmwlth. 1992). Accordingly, because we concluded that the Ordinance is facially unconstitutional and in violation of Barris's Second Amendment rights, he did not need to exhaust his administrative remedies with the Township prior to appealing the zoning permit denial to the trial court and this Court.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jonathan Barris, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 671 C.D. 2020 |
| | : | |
| Stroud Township | : | |

# **O R D E R**

AND NOW, this 28th day of May, 2021, the order of the Court of Common Pleas of Monroe County, dated May 26, 2020, is REVERSED.

_____

P. KEVIN BROBSON, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Barris,            :
            Appellant     :
                         :
           v.             :    No. 671 C.D. 2020
                         :    SUBMITTED:  February 8, 2021
Stroud Township         :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE MARY HANNAH LEAVITT, Judge (P)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  May 28, 2021**

       I respectfully dissent. I do not believe that the Second Amendment gives one the right to have a shooting range in his backyard regardless of where he lives or the surroundings of his property. Even if the right to bear arms carries with it the right to become proficient in the use of firearms, all that should require is that some practice facilities be allowed within a reasonable distance of the gun owner, not that they be permitted in every zoning district in the community, particularly residential districts. In that respect, I disagree with the Majority that maintaining a personal shooting range is analogous to washing a car in the driveway. Furthermore, even if Appellant's property were situated in a district that allowed shooting ranges, it would not meet the 5-acre lot size or 150-yard setback requirement for shooting ranges,[1] both of which I find reasonable safety restrictions on the discharge of

---

[1] I disagree with the Majority's assertion that the 150-yard limitation applies only in the O-1 or S-1 zoning districts and specifically to shooting ranges allowed therein. Section 3 of Ordinance No. 9-2011 provides that "it shall be unlawful to fire or discharge any firearm within the Township of Stroud except as provided in Section 4 Exceptions below…. however, *in no case* shall a firearm be discharged…within 150 yards of an adjacent occupied structure, camp or farm…." (emphasis **(Footnote continued on next page…)**

firearms. Accordingly, I believe that Ordinance No. 9-2011 survives the intermediate scrutiny appropriate here, and that it does not violate Appellant's Second Amendment rights. I would affirm the trial court.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

added). Given that the limitation is obviously a safety measure, it defies logic to infer that it would apply only in those districts thought sufficiently uninhabited to be safe for outdoor shooting ranges, but would not apply anywhere else in the Township such as residential or densely populated commercial districts.